IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY EDWARDS,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 3:19-CV-293-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Over a two-day span in late May 2021, the undersigned held an evidentiary hearing in this case pursuant to a limited remand order from the Seventh Circuit Court of Appeals. (Doc. 27). The sole purpose of the hearing was to determine whether Petitioner Timothy Edwards directed his trial counsel to file a Notice of Appeal on his behalf. For the reasons set forth below, the Court finds that Edwards is not credible regarding his claim that he told counsel to file an appeal.

### BACKGROUND

The following facts are familiar to all parties, but the Court recites them again to provide a complete history of relevant events. From January 2008 to January 2014, Timothy Edwards conspired and agreed with his co-defendants, Luis Rocha-Tapia, David Jenkins, and Lisa Stamm, to knowingly and intentionally distribute, and possess with intent to distribute, a mixture or substance containing a detectable amount of cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. *United States v.*

*Timothy Edwards*, SDIL Case No. 3:14-CR-30173, Docs. 1, 88. Edwards subsequently was indicted on three counts: conspiracy to distribute and possessing with intent to distribute cocaine and marijuana; making a false statement to a federal law enforcement officer; and maintaining a place of business for the purpose of distributing a controlled substance. *Id.* at Doc. 88.

On May 17, 2016, Attorney Travis L. Noble from the law firm of Sindel, Sindel & Noble entered his appearance as retained counsel on behalf of Edwards. *Id.* at Doc. 93. Noble's associate attorney, Grant Boyd, also entered his appearance for Edwards. On July 11, 2016, Edwards pleaded guilty to all three counts pursuant to a plea agreement with the Government. *Id.* at Docs. 132, 134. Included in the agreement was a waiver of his right to appeal. *Id.* at Doc. 134, pp. 20-21.

On April 7, 2017, now-retired District Judge David R. Herndon sentenced Edwards to an 84-month term of imprisonment, a four-year term of supervised release, a $300 special assessment, and a $600 fine. *Id.* at Docs. 170, 176. The Court filed the written judgment on April 10, 2017, but noted that the date of imposition of the judgment was April 7, 2017. *Id.* at Doc. 174. A Notice of Appeal was not filed within fourteen days of the entry of judgment.

On June 7, 2017, Edwards filed a Motion for Extension of Time to File Late Notice of Appeal. *Id.* at Doc. 179. In his motion, Edwards stated that on May 18, 2017, he made an inmate request for a copy of his Judgment, and on May 20, 2017, he asked his fiancé, Natalie Schaefer, to check with the Clerk of Court for any information regarding his appeal. Schaefer obtained a copy of the docket sheet, which revealed that no Notice of

Appeal had been filed. *Id.* at Doc. 179. Judge Herndon denied Edwards's motion for extension of time because he filed it after the time permitted to file such a motion under Federal Rule of Appellate Procedure 4(b). *Id.* at Doc. 182.

Edwards filed a Notice of Appeal anyway on July 5, 2017. *Id.* at Doc. 185. The United States Court of Appeals for the Seventh Circuit directed Edwards to file a brief memorandum stating why the appeal should not be dismissed as untimely. *United States v. Edwards*, No. 17-2365 (7th Cir. 2017), Doc. 2. Edwards, in his jurisdictional memorandum, stated that he believed his attorney had filed a Notice of Appeal, "but instead abandoned Edwards." *Id.* at Doc. 7. The United States moved to dismiss the appeal as untimely, and on December 11, 2017, the Court of Appeals dismissed the appeal as untimely filed under Rule 4(b) of the Federal Rules of Appellate Procedure. *Id.* at Docs. 10, 19.

Twelve days after filing his first notice of appeal, Edwards also attempted to appeal the Court's forfeiture order. SDIL Case No. 3:14-CR-30173, Doc. 194. The United States moved to dismiss that appeal as untimely. *United States v. Edwards*, No. 17-2436 (7th Cir. 2017), Doc. 25. In response, Edwards alleged, among other things, that his appeal was late due to the abandonment of defense counsel. *Id.* at Doc. 28. At that point, the Government reached out to Boyd, Edwards's attorney at sentencing, and asked for an affidavit explaining his representation of Edwards at the change of plea and sentencing hearings. (Pet. Ex. 4). The United States attached that affidavit from Boyd to its reply. *United States v. Edwards*, No. 17-2436 (7th Cir. 2017), Doc. 30. The affidavit stated, in relevant part: "Mr. Edwards never requested our office appeal his case nor sentence. Mr.

Edwards never requested our office file a notice of appeal on his behalf. In addition, as part of the plea agreement, Mr. Edwards agreed to waive such appellate rights." *Id.* at Doc. 30-2. On July 16, 2018, the Court of Appeals dismissed Edwards's second appeal as untimely. *Id.* at Doc. 33.

On March 12, 2019, Edwards filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2255. (Doc. 1). Among other things, Edwards claimed his trial counsel was ineffective in failing to timely file a Notice of Appeal. (*Id.*). Without reaching the merits of the petition, and without holding an evidentiary hearing, this Court found the Section 2255 petition was untimely. The Court noted that, subject to certain exceptions, a petition under 28 U.S.C. § 2255 must be filed within one year of date on which the judgment of conviction becomes final. (Doc. 14). A judgment of conviction becomes final when the time for filing a direct appeal expires, that is, fourteen days from the entry of judgment the defendant would be appealing. (*Id.*). In this case, Edwards's judgment of conviction became final, at the latest, on April 24, 2017.[1] Thus, the statute of limitations for filing a Section 2255 petition expired, at the latest, on April 24, 2018. But Edwards did not file his petition until March 12, 2019. Thus, it was late by nearly a year.

The Court further rejected Edwards's argument that his petition was timely under *Garza v. Idaho*, 139 S. Ct. 738 (2019). In *Garza*, the Supreme Court overturned existing Seventh Circuit precedent and held that an attorney provides ineffective assistance by failing to file a Notice of Appeal upon request, even if the defendant has signed an appeal

---

[1] Again, the date of imposition of judgment was April 7, 2017, but it was not signed and filed until April 10, 2017.

waiver as Edwards did here. The Court found, however, that because *Garza* neither announced a new rule of law nor had been made retroactive to cases on collateral review, it did not extend Edwards's time to file his Section 2255 petition. Accordingly, the Court found Edwards's petition was untimely. (Doc. 14).

Edwards timely appealed the Court's Order dismissing his Section 2255 petition (Doc. 16), and the Court of Appeals appointed counsel for Edwards. Appointed counsel then filed an unopposed motion for remand for the purpose of holding an evidentiary hearing to determine whether Edwards directed his trial counsel to file an appeal on his behalf. The Court of Appeals granted the unopposed motion and remanded the matter to the undersigned for an evidentiary hearing. (Doc. 27).

### EVIDENTIARY HEARING

The Court heard testimony from six witnesses at the evidentiary hearing: Edwards; his uncle, Major James Edwards; his friend, Rita Swiener; his trial attorneys, Travis Noble and his associate Grant Boyd; and now-retired Assistant United States Attorney ("AUSA") Deirdre Durborow.

Edwards testified that on the morning of trial, July 11, 2016, Attorney Noble spoke with AUSA Durborow before escorting him to the hallway for a four-hour discussion about a plea deal. (Doc. 68 at p. 22). The Government had offered to drop his ten-year mandatory minimum to a five-year mandatory minimum, with the potential for two to three years in prison under the safety valve. (*Id.* at p. 23). The Government also would not pursue charges against his significant other, Natalie Schaefer. (Resp. Ex. 9). When Edwards said he wasn't interested and wanted to go to trial, he was informed he would

be looking at potentially 70 years, Schaefer would face 30 years, and his daughter would go into foster care. (Doc. 68 at p. 23). Feeling that he had to "fall on the sword to protect [his] family," Edwards decided to change his plea to guilty. (*Id.* at p. 25).

Edwards testified that he later began to feel horrible about changing his plea. (*Id.* at p. 27). When asked to review his Presentence Investigation Report, Edwards emailed Boyd and asked why it did not sound like the deal he had accepted on the morning of trial. (Resp. Ex. 10 at p. 31). He subsequently emailed Boyd to ask about withdrawing his plea, stating: "Since the deal isn't what we discussed, can we retract the guilty plea?" (*Id.* at p. 27; Doc. 1-1 at p. 32). Edwards testified that Boyd "was dismissive in a way that he said, 'You just can't do that,' and left it at that and was dismissive about it." (*Id.* at p. 30). On cross-examination, however, Edwards acknowledged that Boyd sent him the following response via email:

> As far as withdrawing the plea: To answer your question, the deal was that [AUSA Durborow] would drop the mandatory minimum down to 5 years and let us argue for that and also allow you to give a safety valve proffer and also a normal proffer to get as close down to 5 as possible . . . We discussed this ad nauseum with you at court that day and repeatedly. Unfortunately, things did not go as planned with the safety valve because of your inability to be forthcoming and truthful with them. The guideline range in the PSI is just a guideline. It is not a guaranteed sentence. We walked you through that at court before the plea. She is allowing us to argue that you should be sentenced as close to 5 years as possible given the extent of mitigating factors (family, hard worker, lack of criminal history, baby, etc.). THAT was the deal.

(*Id.* at pp. 61-62). At the evidentiary hearing, Edwards admitted that the Government did not think he had been truthful in his proffer, which is why his sentence would not go below five years. (*Id.* at p. 62).

On April 7, 2017, Judge Herndon sentenced Edwards to 84 months in prison with four years of supervised release to follow. (*Id.* at p. 33). Edwards testified that he was "shocked" at the sentence. (*Id.* at p. 36). According to Edwards, Judge Herndon advised that he could appeal the conviction, "that I could talk to my attorney and he could probably assist me through it, and, if not, that I could speak with the Clerk." (*Id.* at p. 36).

Edwards further testified that, after the sentencing hearing adjourned, Boyd "bee-lined for the door." (*Id.* at p. 37). When he caught up to Boyd, he said, "Hey, I want you to appeal this." (*Id.*). Edwards testified that Boyd rolled his eyes and was very dismissive. (*Id.*). Boyd then changed the subject by saying, "Well, you are getting a year off for the Residential Drug Treatment Program,[2] and after you get out we will probably have you build up a couple cars."[3] (*Id.*). This was the only time Edwards requested an appeal to be filed. (*Id.* at p. 48). According to Edwards, there were a bunch of people around during this conversation, "pretty much everybody was coming up and hugging, you know, at that point, you know, and crying." (*Id.* at p. 38). Edwards stated that, after the hearing, he was operating under the belief that Boyd would file a Notice of Appeal. (*Id.*).

Edwards reported to prison on May 16, 2017—39 days after he was sentenced. (*Id.* at p. 39). He then requested his judgment and commitment order "in order to try to start doing an appeal." (*Id.*). He also testified that he had Natalie Schaefer contact Sindel, Sindel & Noble to obtain his file and to ask about the status of his appeal. (*Id.* at p. 83).

---

[2] The program referenced is the Residential Drug Abuse Program, or RDAP, a substance abuse treatment program offered by the Bureau of Prisons.
[3] Edwards is a mechanic and does auto-body restoration and customization through his company, Edwards Street Machines. (*Id.* at p. 18). According to Edwards, Noble and Boyd had previously discussed Edwards building a custom limo for them. (*Id.* at p. 26).

When he realized no Notice of Appeal had been filed, Edwards filed a Motion for Extension of Time to File a Notice of Appeal. (*Id.* at p. 40). The motion did not specifically say that Edwards had asked Boyd to file a Notice of Appeal. (*Id.* at p. 42). According to Edwards, this was because another inmate had helped him draft the motion. (*Id.* at p. 42). In his accompanying affidavit, Edwards stated: "The Defendant was under the misunderstanding that his attorneys, Grant Boyd or Travis Noble, would file the necessary Notice of Appeal in a timely fashion knowing of Defendant's dissatisfaction of the imposed sentence." (*Id.* at p. 52).

On cross-examination, Edwards admitted he did not contact Boyd or Noble at any time between April 7 and May 24, 2017. (*Id.* at pp. 50; 83). He further acknowledged that his plea "did not include a fixed sentence." (*Id.* at p. 54). Furthermore, when Judge Herndon asked Edwards what he was receiving as a result of his plea, Edwards stated he was getting "potentially five years . . . [to] 20" instead of ten years to life. (*Id.* at p. 56). Edwards also admitted to knowing that the Court was not bound to follow the plea deal or any recommended sentence. (*Id.* at p. 58). He also admitted that he lied when he told Judge Herndon that nobody had attempted to force him to plead guilty in his underlying criminal case. (*Id.* at pp. 74-75).

The Court next heard testimony from Major James Edwards, Edwards's uncle who described himself as more of a father figure. (*Id.* at p. 92). Major Edwards testified that he was in court for Edwards's sentencing hearing and spoke as a character witness on his behalf. (*Id.* at p. 95). After Edwards was sentenced, Major Edwards went forward to the partition between the courtroom gallery and counsel's table. (*Id.* at p. 96). He was about

five yards from where Edwards and Boyd were sitting. (*Id.* at p. 97). Major Edwards testified that "Tim and Mr. Boyd was having a conversation that I could not hear. And then, at some point, you know, the appeal thing came up again and then through that, again from what I heard, was—gave me comfort and confidence." (*Id.* at p. 96). At that point, the Court allowed Major Edwards to proffer what he heard Edwards ask Boyd, as the undersigned had previously denied Edwards's motion *in limine* to admit that testimony on the basis of hearsay. (Doc. 60).

Rita Swiener, Edwards's long-time family friend, also proffered testimony that she overheard a conversation between Edwards and Boyd, which, according to Swiener, occurred while she was standing at the courtroom door and Edwards and Boyd were 10 feet away and walking toward her.[4] (*Id.* at pp. 108, 112). Then, as Swiener was walking to her car, she said to Boyd "Can you appeal it," or "Are you going to appeal it," but she was not sure if Boyd heard her. (*Id.* at p. 112).

Boyd testified that, after Judge Herndon sentenced Edwards, he told Edwards that while his sentence was not 60 months, if he qualified and if the BOP allowed him to participate in the RDAP program, that would reduce his sentence by up to 12 months. (*Id.* at p. 131). In other words, his sentence would be dropped to six years, "which is pretty close to five." (*Id.*). Edwards responded "okay" or "something along those lines." (*Id.* at p. 132). According to Boyd, this conversation occurred at or near the podium in the well of the courtroom. (*Id.* at p. 163). Furthermore, he would have been speaking softly

---

[4] Like Major Edwards, the Court did not allow Ms. Swiener to testify as to the contents of those hearsay statements.

because they were in open court. (*Id.* at p. 164). Boyd testified that Edwards "did not say anything about a Notice of Appeal or asking to appeal." (*Id.* at pp. 132-33). Boyd left the courthouse as soon as the hearing concluded. (*Id.* at pp. 133, 162).

Boyd next testified that on June 7, 2017, after Edwards filed his Motion for Extension of Time to File a Notice of Appeal, he emailed AUSA Durborow to see if a hearing was necessary to address the allegations in the motion. (*Id.* at p. 140; Pet. Ex. 3). On February 13, 2018, AUSA Durborow emailed Boyd and asked him to prepare an affidavit explaining his representation of Edwards, specifically the details regarding the change of plea and sentencing. (*Id.* at p. 142; Pet. Ex. 4). On March 9, 2018, AUSA Durborow sent another email to Boyd again asking him to prepare an affidavit explaining the plea agreement and that: "[a]t no time, did he ask to appeal (or if he did what did you tell him) and at [n]o time did your firm abandon him." (*Id.* at p. 146; Pet. Ex. 5). Boyd explained that he took the email as suggested topics for the affidavit, "but that no one tells me what to put in an affidavit." (*Id.*). Boyd acknowledged that he prepared several versions of his affidavit after the Government proposed changes, but that he only made changes he thought were appropriate. (*Id.* at pp. 157-58). Boyd testified that no one ever requested that he or anyone in his firm file a Notice of Appeal. (*Id.* at p. 172). If someone had asked him to do so, he would have done it. (*Id.*).

When asked why she included the language "or if he did what did you tell him" in her email to Boyd regarding his affidavit, AUSA Durborow testified that she did not think Edwards had asked Boyd to file a Notice of Appeal, but she wanted to verify that was accurate. (*Id.* at p. 184). Durborow explained that, had Edwards asked for an appeal

to be filed, she would have wanted to know when, where, why, and was it within 14 days of the judgment being entered. (*Id.*). Then, depending on Boyd's actions, she perhaps would have informed the Court and/or requested that Edwards have new counsel. (*Id.*). Durborow assured the Court that she did not write Boyd's affidavit or tell him what to write; she simply wanted the truth. (*Id.* at p. 187).

Finally, the Court heard testimony from Travis Noble. (Doc. 69 at p. 6). Noble testified that he did not attend Edwards's sentencing hearing due to a scheduling conflict. (*Id.* at p. 11). He further testified that he does not "do appeals," but that if a client asks for an appeal, he files the Notice of Appeal then refers the client to either his law partner, Rick Sindel, or an outside lawyer. (*Id.* at pp. 13-15). His associates also would have been able to approach Mr. Sindel. (*Id.* at p. 14). However, Noble "was not aware that Mr. Edwards ever asked anyone in my firm to file an appeal." (*Id.* at p. 15).

## Discussion

The only factual issue before the Court is whether Edwards asked Boyd to file a Notice of Appeal after he was sentenced by Judge Herndon. After considering the testimony and record evidence, the Court finds that Edwards is not a credible witness, and his testimony fails to establish that he asked Boyd to do so.

As an initial matter, after observing Edwards's demeanor during the hearing and his numerous attempts to disparage trial counsel, the Court finds his testimony to be highly unreliable. There are a number of instances in the record that support a finding that Edwards is dishonest and has no qualms lying under oath if it benefits him. First, the Government ended his safety valve proffer because he was "shut off, elusive, attempted

to minimize things, and withheld information." (Resp. Ex. 9). Second, during the evidentiary hearing, Edwards repeatedly tried to claim he did not understand why his sentence was more than five years and that he did not understand the appellate waiver contained in his plea, only to be presented with his prior testimony that indicated he understood his sentence guidelines and that he had waived most if not all of his appellate rights. Third, Edwards claimed Boyd was dismissive and non-responsive when he asked about withdrawing his plea because the number of years on the table was more than they had originally discussed, but the Government presented evidence of email communications from Boyd explaining why the "deal" was not what they had hoped it would be (*i.e.*, the failed safety valve proffer). Fourth, there is evidence in the record that Edwards offered to testify falsely at trial that incriminating text messages were in regard to performing oral sex on other people for money rather than for drugs. (Pet. Ex. 23). Boyd and Noble explained they could not ethically allow Edwards to lie in court. (*Id.*). Fifth, one of the crimes Edwards pleaded guilty to was making a false statement to a law enforcement officer. And last, Edward testified that he lied to Judge Herndon, under oath, when he pleaded guilty to that charge.

The Court further notes that, despite Edwards's testimony to the contrary, Judge Herndon never advised Edwards that he could ask his attorney to file a Notice of Appeal. During the sentencing hearing, Judge Herndon counseled Edwards that although he waived most if not all of his rights to appeal his sentence, if he believed his waiver was not enforceable, he could appeal within 14 days. He then told Edwards that "if requested, the clerk will prepare and file a Notice of Appeal on your behalf." (Resp. Ex. 2 at p. 60).

Thus, Edwards knew he had 14 days to file a Notice of Appeal. While Edwards testified more than once that it is extremely hard to file papers from prison (*Id.* at pp. 40, 47), the Court notes that Edwards did not report to prison until May 16, 2017—39 days after he was sentenced and well past the time to file a Notice of Appeal. And Edwards admitted he did not attempt to contact his trial attorneys during this time.

Edwards's witnesses at the hearing did little to bolster his credibility. His friend, Rita Swiener, testified she overheard a conversation that took place as Boyd and Edwards were walking toward the courtroom doors. But Major Edwards testified he overheard this same alleged conversation between Edwards and Boyd while they were seated five yards away at counsel's table. This conversation, which according to Edwards was very brief, could not have happened in two places at once. Furthermore, according to the transcript of the sentencing hearing, there were 17 people present in the gallery to support Edwards. (Resp. Ex. 2 at p. 29). The Court finds it highly unlikely that anyone could hear a conversation taking place 15 feet away in Judge Herndon's cavernous courtroom (where the acoustics are dreadful) while standing among 17 people who were hugging and crying.

On the other hand, the Court finds Boyd's testimony that Edwards never asked for an appeal to be credible. Both Boyd and Edwards testified that after Judge Herndon handed down the 84-month sentence, Boyd mentioned the RDAP program as a way to get closer to the five-year sentence they had hoped for. Boyd also testified that had Edwards asked for an appeal, he would have filed a Notice of Appeal. (Doc. 68 at p. 172). AUSA Durborow's testimony and her emails to Boyd corroborates Boyd's testimony, in

that she did not believe Edwards had asked for an appeal. And Noble also testified that, to his knowledge, Edwards did not ask anyone in his firm to file an appeal on his behalf. The Court has no reason to doubt the testimony of these witnesses.

## Conclusion

For these reasons, the Court finds that Edwards is not a credible witness, and he did not ask Boyd to file a Notice of Appeal after he was sentenced on April 7, 2017. The Clerk of Court is **DIRECTED** to send a copy of this Order to the Seventh Circuit Court of Appeals and all counsel of record.

**IT IS SO ORDERED.**

DATE:   October 7, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**